[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 314 
On an appeal from a judgment in each of three cases against this appellant, bearing Circuit Court Numbers 80-419, 80-420, and 80-422, the cases have become consolidated by the parties for our consideration and determination. In CC-80-420, a jury found defendant guilty of selling marijuana to Gabe McCray on May 16, 1980, and she was sentenced to imprisonment for four years. Thereafter, she pleaded guilty in each of the other two cases. In CC-80-419, she was charged with selling marijuana to Gabe McCray on May 12, 1980; in CC-80-422, she was charged with the unlawful possession of marijuana. In CC-80-419, defendant was sentenced to imprisonment for four years, with the sentence to "run concurrent" with the sentence in CC-80-420; in CC-80-422, defendant was sentenced to imprisonment for two years, with the sentence to "run concurrent with the sentence and judgment of Cases No. CC-80-419 and CC-80-420."
Several issues are presented in CC-80-420, which we now consider.
 CIRCUIT COURT CASE NO. 80-420
According to the testimony of Gabriel McCray, otherwise known as Gabe McCray, a Birmingham police officer assigned to the United Narcotics Detail Operation, he and his partner Deputy W.B. Carson of the Jefferson County Sheriff's Department, *Page 315 
went to a place of business in Alabaster, Shelby County, Alabama, apparently owned and operated by appellant and her husband, John Graffeo, by the name of Stop and Shop Mini Mart,[1]
and purchased three bags of marijuana from the appellant for the sum of thirty dollars. Appellant thereafter categorically denied the transaction and further testified that she had never met Officer McCray. It appears from the evidence that Mr. and Mrs. Graffeo had lived in Shelby County about four months prior to May 1980 and theretofore had lived in Jefferson County for many years. A jury question was presented as to the guilt of defendant, and we see no reasonable basis for any contention to the contrary.
Appellant insists that the trial court denied her right to impeach witness McCray by showing his bias toward the defendant or in favor of the State. She urges that defendant was prevented from doing so during cross-examination of Officer McCray and during the testimony of the defendant. Reference is first made to the following during defendant's cross-examination of Officer McCray:
 "Q. Isn't it a fact that you refused to talk about this case in any form with me?
 "A. I informed you that it is not customary and it is not our operating procedure to discuss the details of a case with a defense attorney.
 "MR. WILLIAMS: Just so the record is clear that is also our instructions through our office.
 "MR. LYON: I object to that, a statement by counsel.
"BY THE COURT: I sustain.
 "Q. I believe you also stated to me on that day, I believe you, quote, I do my job well, unquote, is that not what you said?
"A. Yes, I did.
 "Q. I believe you also said quote, I am a very obedient officer, is that not what you said?
"A. Yes, I mean I follow instructions.
 "Q. When someone tells you to do something, you do it?
 "MR. HILL: We object, No. 1, it calls for a mental operation, and No. 2, it is totally irrelevant.
"MR. LYON: Cross examination, Judge.
 "BY THE COURT: I don't see the relevancy of it, do you want to tell me where you are going with this?
 "MR. LYON: Your Honor, we submit that Mr. McCray is not telling the truth as to Mrs. Graffeo in this charge. I'm trying to find out something from him who he operates from, he says he is an obedient officer, and he says he does things that other people tell him to do. I think someone has gotten him to come into this Court and tell this story to the Jury.
 "BY THE COURT: That is enough, I sustain the objection.
 "Q. Let me ask you this question, Mr. McCray, if one of your superiors asked you to come into this courtroom to testify that Mrs. Graffeo did sell you marijuana you would so testify?
"A. If it's the truth, yes, if it's a lie, no.
"Q. Have you ever been in Court before?
"A. Yes, I have.
 "Q. Isn't it a fact on prior cases in which you testified, the defendant has been found not guilty?
 "MR. WILLIAMS: Object to what other defendants have been found.
 "Q. Have you had any financial dealings with any public officials in Shelby County?
"MR. WILLIAMS: Object as to relevancy.
"BY THE COURT: Sustained."
As to appellant's asserted denial by the trial court of appellant's right to show the bias of the principal witness against her, reference is made in appellant's brief to the following occurrence while she testified on redirect-examination: *Page 316 
 "Q. Mrs. Graffeo, would you tell the jury whether or not you have reason why Gabe McCray would come here and accuse you of selling marijuana?
"A. Yes.
"MR. WILLIAMS: Object, mental operation.
"BY THE COURT: Sustained on that form.
 "Q. Mrs. Graffeo, do you have a basis of fact that would indicate why Mr. McCray would come into this Courtroom and testify against you?
"A. Yes, sir.
 "MR. WILLIAMS: We have the same objection not only to the form, it would call for a mental operation of the defendant or any witness, I couldn't have asked that of Mr. McCray or any of my witnesses.
 "MR. HILL: Further, the State would note Mr. McCray has taken the stand and there subject to cross-examination and if he had any bias against this witness, he spent considerable time under oath and he could have asked at any time about any bias he may have had against this particular defendant.
 "MR. LYON: I say that Mr. McCray had a big interest to protect.
 "BY THE COURT: Mr. Bailiff, take the Jury to the deliberation room for a moment.
"(OUTSIDE THE PRESENCE OF THE JURY)
 "BY THE COURT: Harry, what are you getting at, I mean if you can really show us some bias, I will let you show it, but I am wondering where you are going with this, this blanket question.
 "MR. LYON: The Graffeos were approached by some of the State's events [agents?], $8,000.00, these charges would be dropped, that the agent would not testify as to the identity of Mrs. Graffeo, they were approached after they were charged for this crime.
"BY THE COURT: Who supposedly approached them?
"MR. LYON: Ed Neal.
"BY THE COURT: Who is that?
"MR. LYON: Her bookkeeper acting as an agent.
 "BY THE COURT: She is going to testify as to what her bookkeeper was told? I wouldn't allow that.
 "MR. HILL: Why don't you bring the bookkeeper and let the bookkeeper testify?
 "MR. LYON: We would submit your Honor, it wouldn't be likely that the bookkeeper would admit to it.
 "BY THE COURT: For her to say is nothing more than hearsay, Harry.
 "MR. HILL: We submit it, it wasn't the truth put the man on the stand and let him come and tell us.
"BY THE COURT: Is there anything else?
 "MR. LYON: Whatever your ruling is I will understand.
 "BY THE COURT: If that is what the testimony is attempted to be elicited the Court is going to sustain the objection, is there anything else debatable that we can discuss now.
"MR. LYON: I have no further questions.
"BY THE COURT: Bring the Jury back."
Defendant's attorney should have been allowed to show what he was endeavoring to show, if he could have done so by legal evidence. The evidence sought by the testimony of defendant was hearsay and does not come within any exception to the general exclusionary rule as to hearsay evidence. It now appears that at the time defendant's attorney was cross-examining the chief witness against defendant he could well have been allowed more breadth, but such was not apparent at the time of such cross-examination. Notwithstanding the seriousness of the innuendo involved, the trial court was not in error in its rulings on the subject.
During the redirect examination of the officer who had testified that he purchased the marijuana from the defendant on May 16, 1980, as alleged in the indictment, he was asked the following question: *Page 317 
"I will ask you if you ever had the occasion at the Stop and Snack prior to May 16 to have a conversation with Mrs. Graffeo concerning illegal drugs?" The defendant objected to the question, and before the court ruled the jury was asked to retire and a long series of discussions occurred between the district attorney, the defendant's attorney and the court about the proposed testimony. The defendant made a motion for a mistrial which the court overruled, all out of the presence of the jury. When the jury returned, counsel for the State did not pursue the questions of the witness that he had indicated he desired to ask, which pertained to whether he had a transaction with defendant relative to drugs on May 12, 1980. Appellant says in his brief: "The fact that the Court never ruled [on defendant's objection to the question asked the witness just before the discussion out of the presence of the jury occurred] was clearly in error because the jury was allowed to hear the question which had no probative value whatsoever other than to show the bad character of the defendant which was not the issue at that time since the defendant had never testified and, furthermore, the Court should have granted the defendant's motion for a mistrial." As the particular question to which the objection was made was never answered and was not repeated, the trial court cannot be charged with prejudicial error in failing to rule on the question. The result was the same as if the objection were sustained or the question were expressly withdrawn. True, as argued by appellant, the nature of the question is such that it could have tended to harm the defendant, but it did not merit a mistrial.
During the cross-examination of Officer Carson, defendant's attorney inquired of him as to his observation of Officer McCray while Officer McCray was going into Stop and Snack in Alabaster on May 16, 1980. The following is the concluding part of such cross-examination:
 "Q. I am asking — How do you know that he didn't have any marijuana in his pockets on that date?
"A. We don't carry marijuana in our pockets.
 "Q. Did you search him, did you check him, did you do that?
"A. I didn't search —
 "Q. I'm just asking you you did not check your partner?
"A. I didn't check my partner.
 "Q. You don't have any financial dealings with Mr. Gabe McCray?
"A. Any what?
"Q. Financial dealings?
"A. Such as?
 "Q. Any financial transactions, money changing hands, between you and him?
 "A. I give him our company money to spend a lot of times.
"Q. Anything besides that?
 "A. No, I don't know what you are making reference to."
On redirect examination of the witness Carson, the following occurred.
"Q. How long have you known Gabe McCray?
"A. About 2 years we worked together.
 "Q. Do you, if you know, Gabe McCray to lie under oath?
"MR. LYON: Object.
 "MR. WILLIAMS: I will lay the proper predicate. I withdraw the question.
 "Q. Do you know Mr. McCray's reputation in the community for truth and veracity?
 "MR. LYON: Object Your Honor, that is still not the proper predicate.
 "MR. WILLIAMS: Your Honor, I must lay the proper predicate. He has brought in Mr. McCray's reputation for truth and veracity, once attached [sic, which we construe as `attacked'], I can support it.
 "MR. LYON: I submit the proper predicate has not been laid.
"BY THE COURT: You may lay the predicate.
"Q. How long have you known Mr. McCray?
"A. Approximately 2 years.
 "Q. I will ask if you had the opportunity to know him in his own community or in his business community? *Page 318 
"A. Both.
 "Q. I will ask you if you had the opportunity to hear of his reputation for truth and veracity in either one of those communities.
 "MR. LYON: Object, Your Honor. That is not the proper predicate.
 "MR. WILLIAMS: Just one second, Your Honor. I will read it right out of the book for you.
 "BY THE COURT: No, don't do that, I will make the ruling. I overrule it.
 "MR. LYON: We accept [sic, which we construe as `except'].
"Q. Have you had that opportunity?
"A. Not in his community but in our business, yes.
"Q. In your business community?
"A. In our job, yes.
 "Q. Restricting your answer to the business community I'll ask you, whether or not, Mr. Gabe McCray has the reputation if any for truth and veracity?
"MR. LYON: Object to the form.
 "BY THE COURT: Overrule. That is a yes or no question.
"A. He has a good reputation.
"Q. Does he have a reputation at all?
"A. Yes.
"Q. What is that reputation?
"A. It is a very good reputation."
Appellant takes the position that the cross-examination of Officer Carson "did not put Officer McCray's credibility or character in issue" and therefore the evidence above quoted on redirect examination of Officer Carson was not admissible. However, it is to be noted that there the only grounds of objection to any of the questions asked were as to the "form" of the questions or as to the asserted failure to "lay the proper predicate." This precludes a reversal by reason of the present contention that defendant "did not put Officer McCray's credibility or character in issue." Appellant now takes the additional position that the questions asked the witness Carson on redirect examination did not generalize the reputation inquired about by the adjective "general." As to this we are in agreement, for it is the "general" reputation only that is admissible. Gamble, McElroy's Alabama Evidence, § 26.02 (4) (1977). However, as to this, it is to be observed that the State was ultimately able to obtain an answer from the witness that Officer McCray had "a very good reputation" by the question, "What is that reputation?," to which no objection was made. The proceeding as to the admissibility of the evidence is tangled and confusing, but no prejudicial error now presentable is to be found in the rulings of the trial court on the subject.
Another issue raised by appellant pertains to the admission in evidence of State's Exhibits No. 1, 2, 3 and 4. We have before us a brown envelope, about twelve inches long and ten inches wide, certified by the official court reporter as containing three packets of marijuana, Exhibits 2, 3 and 4. We have not broken the seal to examine the contents. Four witnesses testified as to the contents of State's Exhibits 1, 2, 3 and 4. Officer McCray testified that he placed each of the three packets of marijuana purchased from defendant and identified as Exhibits 2, 3, and 4, in a brown envelope, which he identified as State's Exhibit No. 1 and turned them over to Officer Carson. Officer Carson testified that he turned them over to Mr. Gerald Wayne Burrough, a criminalist with the Alabama Department of Forensic Sciences. Mr. Burrough testified that he turned State's Exhibit No. 1 over to Mr. Michael Sparks, a drug chemist with the Alabama Department of Forensic Sciences. Mr. Sparks testified that State's Exhibits 1, 2, 3 and 4 were in substantially the same condition as they were when delivered to him by Mr. Burrough and that the contents of Exhibits 2, 3 and 4 were examined by him and found to contain marijuana. We are convinced that the chain of possession of the three packets of marijuana was established by the evidence, and that State's Exhibits No. 1, 2, 3 and 4 were properly admitted in evidence.
Appellant seeks to predicate error upon the following action of the trial court during the direct examination of the defendant: *Page 319 
 "Q. Have you or have you not ever been placed on trial in a criminal proceeding until yesterday?
"A. No, sir.
 "MR. WILLIAMS: We object to this line of questioning and ask her answer be stricken, we object to the line of questioning, we have not tried to impeach this lady by bringing up any prior alleged crimes or anything like that. The predicate is not there for him to verify her truth and veracity and good criminal record at this point.
 "BY THE COURT: I sustain the objection and order her answer stricken from the record, and instruct the Jury to disregard and instruct counsel not to proceed with this line of questioning."
Appellant's attorney argues in his brief, "This is in error because if a party introduces illegal evidence, his opponent has the unconditional right to rebut such evidence with other illegal evidence." The reference is to appellant's asserted illegal evidence during the redirect examination of Officer McCray, wherein he was asked if he "ever had the occasion . . . prior to May 16 to have a conversation with Mrs. Graffeo concerning illegal drugs." As we have previously stated, the question was never answered. The incident did not constitute an introduction of "illegal evidence," which appellant says he had the right to rebut "with other illegal evidence."
Appellant complains that, after the defendant had testified on direct examination, she "was asked by the State a series of questions concerning conversations and sales of marijuana and other illegal drugs with Officer McCray on May 12, 1980." The statement is made in appellant's brief that "The State offered this evidence for impeachment purposes and the defendant objected," and that the court "overruled the defendant's objection to this series of questions and allowed the evidence of prior act to go to the jury." The transcript shows that some of these questions were answered by the defendant before an objection was interposed. The evidence sought by said questions would not have been admissible had the defendant not testified on direct examination as follows:
 "Q. Have you ever met or seen prior to yesterday, the man named Gabe McCray?
"A. No, sir.
"Q. Did you ever sell any marijuana to Gabe McCray?
"A. No, sir."
Affirmative answers to the questions asked the defendant on cross-examination as to defendant's dealings with Officer McCray would have been in direct contradiction of her testimony on direct examination; the inquiry comes within the range of proper cross-examination of a witness, whether the answer to the inquiry is affirmative or negative. In this instance, it was negative. The court was not in error in overruling defendant's objections to the questions.
During the cross-examination of the defendant, the following occurred:
 "Q. Directing your attention specifically to September 5th, 1980, I will ask you, if you had —
 "MR. LYON: Object Your Honor. May I approach the bench?
 "BY THE COURT: No, just state your objections from there.
 "MR. LYON: I submit and refer to my prior Motion in Limine and I show the Court this line of questioning is improper based on the statement in the Motion in Limine.
"BY THE COURT: Overruled.
 "MR. LYON: We accept [sic, which we construe as except]."
Both parties appear to treat the request of counsel for defendant to approach the bench as made "to make an offer or showing of what counsel expected to prove," which it was not. The request was for the purpose of making known to the court, out of the presence of the jury, defendant's ground of objection to an unfinished question. No harm was done the defendant by requiring that defendant's attorney make known his objection in the presence of the jury, which was to the effect that the grounds therefor were shown in the motion in limine, which the court had previously overruled. *Page 320 
Appellant urges that the trial court unduly restricted defendant's attorney, in his efforts after defendant had testified, to show by three witnesses for the defendant that defendant had a good general reputation for truth and veracity. One of the witnesses was Mr. Stephen Tate, who had lived in Pleasant Grove in Jefferson County, Alabama, sixteen years. The court sustained the State's objection to an inquiry of the witness as to defendant's general reputation for truth and veracity in Jefferson County. Thereafter, in a voir dire interrogation of the witness by counsel for the State, the following occurred:
 "Q. Mr. Tate this is something that you have heard in the community or is this just your personal opinion.
"A. It is my personal opinion.
 "MR. WILLIAMS: We object if he hadn't heard about it from the community.
 "BY THE COURT: I sustain, Mr. Tate's answer `yes' is ordered stricken from the record and the jury is ordered to disregard it."
The answer of the witness discloses that whatever testimony he may have given as to the general reputation of the defendant was only his own "personal opinion," which would not have been admissible. Gamble, McElroy's Alabama Evidence, § 26.02 (4) (1977). In view of this development, the sustention by the court of the State's objections to previous questions as to the general reputation of the defendant for truth and veracity was relieved of any error such sustention could have had. The same result follows as to the witness Mr. Pete Patera, who, when he was asked whether his opinion as to defendant's truth and veracity was based "on anything that you have heard," replied, "I don't think I have to base it on anything I hear. I use my own judgment."
The third character witness for the defendant was Mrs. Mayo Taylor. As to her testimony, counsel for the State moved that it be excluded, "based on the fact it is not what she has heard but her own opinion." The court said: "She had testified earlier that it was based on what she had heard and she testified it was her opinion. I am going to allow it."
The court's rulings as to the evidence offered by the defendant as to her good character or reputation were free of error.
During the direct examination of Officer McCray as he was testifying as a witness for the State on rebuttal as to the purchase of some marijuana from defendant on May 12, 1980, he testified:
 "Q. Can you state whether or not you had a further conversation with Mrs. Graffeo at this time?
 "A. Well at this particular time I asked could she get me anything else besides marijuana, you know perhaps some Quaaludes or Talwins.
"Q. What was her response, if any?
"A. She said, yes she could, she would check on it."
On cross-examination, the witness testified:
 "Q. McCray, I believe you testified you asked my client for some Quaaludes and some Talwin, is that correct?
"A. I asked her could she get me some.
 "Q. Did you ever go back and get any Quaaludes or Talwin, yes or no?
"A. No, would you like to know why?"
On redirect examination, the following occurred:
"Q. Do you know what Talwin is?
"A. Talwin is —
"MR. LYON: Object. It is irrelevant.
 "MR. WILLIAMS: He was going to try and buy some Judge, and she
"BY THE COURT: I sustain that.
 "MR. WILLIAMS: We ask you Your Honor to take judicial knowledge that Talwin, Quaalude and methaqualone are on the controlled substances list.
 "MR. LYON: I object it has no relevancy at all to the charges that my client is facing.
 "BY THE COURT: Let's just go on from this point, it is immaterial.
"MR. WILLIAMS: That is all."
In appellant's brief it is argued as to what we have just quoted as occurring during the redirect examination on rebuttal of Officer McCray: *Page 321 
 ". . . The district attorney asked officer McCray `Do you know what Talwin is?' The defendant objected and the district attorney stated, `Mr. Williams, he was going to try and buy some, Judge.' and the court sustained the objection then. Mr. Williams said, `We ask, Your Honor, to take judicial knowledge that Talwin, Quaalude, and methaqualone are on the controlled substance list. Defendant again objected and the Court would not rule on his objection. The comments of the district attorney were made in the presence of the jury after the Court had sustained an objection, yet, the district attorney insisted on referring to those illegal drugs which were not part of the crime charged in the indictment and were obviously made to inflame the jury and, in fact, did so. The Court committed reversible error in allowing these comments to be considered by the jury and when coupled with the other illegal evidence and remarks of the district attorney were so highly prejudicial that they could not be removed from the jury's mind by the Court."
While we do not approve the action of the district attorney in requesting in the presence of the jury that the court take judicial knowledge that the mentioned drugs were on the controlled substances list, and we think the court should have been more definite in its ruling on the objection of defendant, we do not interpret what the court said as action wherein it "would not rule on his [defendant's] objection." By saying, "Let's just go on from this point, it is immaterial," the court was apparently expressing a view in agreement with the point made by defendant by his objection. We agree with appellant that the matter should have been excluded from the consideration of the jury, but no motion was made to that effect. The court did not commit prejudicial error in what it did or in what it failed to do.
Appellant seeks to predicate error upon the following that occurred during the opening argument to the jury of counsel for the State:
 "MR. WILLIAMS: We did not being [sic, which we construe as `bring'] up and quite frankly we could not bring up the other sale of marijuana on the May 12th date that you heard about today.
 "MR. LYON: Object to that statement as to this date and counsel knows that is not proper.
 "MR. WILLIAMS: Judge, we had direct testimony about her impeachment.
 "MR. LYON: The purpose of the testimony, Your Honor, was one thing and the argument is made to another.
 "BY THE COURT: Don't let your argument stress on the improper aspect."
In his brief, counsel for appellant says as to the portion of the transcript just quoted:
 "He [counsel for the State] argued about a prior crime charged in another indictment that was illegally allowed into evidence for impeachment purposes of the defendant and even stated that he knew it was illegal by saying, `We did not bring up and quite frankly we could not bring up the other sale of marijuana on the May 12 date that you heard about today.'
 "The defendant objected to this argument, but the Court allowed it to go to the jury. This argument was highly illegal and had the sole purpose of inflaming the emotions of the jury toward Fannie Graffeo. This argument should have been eradicated from the jury's mind by proper instructions from the Court, however, the Court failed to do so and therefore committed reversible error."
We do not disagree with all counsel for appellant states as just quoted from his brief, but we disagree, as we have indicated herein, that evidence as to the sale of marijuana on May 12, 1980, "was illegally allowed into evidence." It seems that the trial judge was of the view that counsel for the State was on the borderline, at least, of improper argument and that he directed State's counsel not to cross over it. Although the trial court did not definitely rule on defendant's objection to the argument, there was no definite refusal to do so. Counsel for both parties immediately argued *Page 322 
the question presented by the objection. The transcript does not show what was said immediately after the court said, "Don't let your argument stress on the improper aspect." Apparently it ended the issue between the parties at the time to the reasonable satisfaction of both parties. We conclude that no error prejudicial to defendant is to be found in what occurred as quoted above.
During the closing argument to the jury of counsel for the State, the following occurred:
 "MR. HILL: I don't have any children in that school.
 "MR. LYON: I object. That is inflammatory and highly prejudicial. Never brought it out.
"MR. HILL: His own witness testified to it.
"MR. WILLIAMS: Through them, not us.
 "BY THE COURT: I still rather you not delve into that, Mr. Hill."
The court reporter's transcript does not give the context of the material just quoted. There is good reason to believe, as counsel for appellant argues in his brief, that the reference was "to a school located near the premises" where Mrs. Graffeo had allegedly sold marijuana in her store. We do not question the correctness of such statement in appellant's brief, but, in the absence from the transcript of any context of the statement of defendant's counsel to which the objection was made, we are not at liberty to accept appellant's statement as to the reference other than as argument only. As thus treated, we find no basis for concluding that the trial court should have done more than request "the district attorney `not to delve' into that matter," which counsel for appellant now urges as another basis for a reversal.
We have considered all of the issues raised by appellant as to the judgment of conviction. Appellant urges also that the court committed error in sentencing the defendant. The same contention is made in each of the other two cases, which we now consider.
 CIRCUIT COURT CASES 80-419 AND 80-422
About two months after the trial and conviction in Case No. 80-420, the defendant and her attorney withdrew the plea of not guilty in No. 80-419 and in No. 80-422 and entered a plea of guilty therein. After an adjudication of guilt in each case, the court continued it "for sentencing and hearing on Presentence Investigation and probation application" until 9:00 a.m. on the 23rd day of February, 1981, the date to which Case No. 80-420 had been continued for a presentencing investigation report and for sentencing.
 THE THREE CASES
All three cases were thereafter continued for the same purpose to March 23, 1981, at which time there was a hearing on all three cases as reported by the court reporter, whose transcript is the same in each of the three cases as it is in the other two. The transcript commences:
"PROCEEDINGS
 "(There was a Bench Conference between the Court, the District Attorney, and Counsel for the Defendant out of the hearing of the Court Reporter; after which the following proceedings were had:)
 "THE COURT: The request for probation is denied. You may proceed."
Thereafter, the transcript contains about twenty pages of testimony of three witnesses presented by defendant, about six pages of arguments of counsel and the pronouncement of sentence in each of the cases. The transcript does not contain a copy of the report of the presentence investigation.
A major contention of appellant in each of the cases is that the trial court "did not comply with `Alabama Rules of Criminal Procedure — Temporary Rules,' in conducting a sentence hearing." Rule 2 (b)(2) of Alabama Rules of Criminal Procedure — Temporary Rules, effective February 23, 1980, provides: *Page 323 
 "Upon a determination of guilt the court shall conduct a sentence hearing and pronounce sentence, or shall set a date for sentence hearing and pronouncement of sentence."
Rule 3 (a)(2) provides:
 "Felony offenses. On motion of the court or written motion of either party, the court shall require a written report of a presentence investigation of a defendant convicted of a felony, and such defendant shall not be sentenced or otherwise disposed of before such report has been presented to and considered by the court."
Rule 3 (c) states:
 "Availability of Report. Copies of the presentence report shall be furnished to the district attorney and attorney for the defendant prior to the sentence hearing."
Rule 6 (b)(1) provides:
 "Unless the court has no discretion as to the penalty to be imposed and no power to suspend execution of the sentence, the court shall conduct a sentence hearing, unless waived by the parties with consent of the court. . . ."
Appellant does not question the discretion vested in the trial court to grant or deny defendant's application for probation. The irreviewability thereof is well settled. Turner v. State, Ala.Cr.App., 365 So.2d 335 (1978); Driggers v. State, Ala.Cr.App., 344 So.2d 226; Hughes v. State, 45 Ala. App. 250,228 So.2d 862 (1969). In questioning the compliance by the trial court with Alabama Rules of Criminal Procedure — Temporary Rules, emphasis is placed upon the statement by the court at the commencement of the sentence hearing: "The request for probation is denied. You may proceed." After considerable testimony and argument of counsel, the court said: "Probation will be denied. . . ." On the date of the sentence hearing, the court entered a written order denying defendant's application for probation in each of the three cases.
During the sentence hearing in the three cases, defendant called as a witness the probation officer who had made the report of investigation and Officer Gabriel McCray, who was the principal witness against the defendant in the case that was tried, No. 80-420. Appellant seeks to base error on a number of adverse rulings against defendant as to evidence sought to be introduced by such witnesses. Such questions give us some concern, but of primary concern to us is the fact that according to the transcript the trial court announced at the commencement of the hearing:
"The request for probation is denied."
In our opinion, Alabama Rules of Criminal Procedure — Temporary Rules contemplate a hearing in which there should be no adjudication as to the punishment imposed or whether probation should be granted until both parties conclude their presentation of evidence and utilize their right to be heard. We have looked for some explanation in the record proper, and in the transcript, for the judgment pronounced, whereby it could be said with reason that the matter to be judged had not actually been prejudged. Although we are inclined to think that some such explanation can be made, we find none in the record proper, or in the transcript or in briefs of the parties. As a result, we must find that there was a failure to comply with the provisions of Alabama Rules of Criminal Procedure — Temporary Rules, effective February 23, 1980, as quoted above.
Although there is no suggestion or indication that the action of the court was influenced thereby, it is remarkably substantially coincidental that the relatively new crime in Alabama of "trafficking in Cannabis, coccaine, etc.," as to which probation cannot be granted by the trial court, was first proscribed by Acts 1980, No. 80-587, p. 926, effective May 28, 1980, in the same month as, but only a few weeks later than, the commission of the crimes in the instant cases.
In remanding the cases for another sentence hearing, it is directed that the parties be given due notice of the time thereof, that the punishment fixed by the term of imprisonment imposed is to remain as it was in each case, and that the hearing to be *Page 324 
conducted is to be limited to one for the purpose of determining, in accordance with Alabama Rules of Criminal Procedure — Temporary Rules, effective February 23, 1980, whether the sentence should be suspended and probation granted, and, if so, the extent and terms thereof.
 CONCLUSION AS TO THE THREE CASES
Finding no error in the record prejudicial to the defendant affecting the judgment of conviction, the judgment of conviction in each of the three cases should be affirmed. Each case should be remanded to the trial court for another sentence hearing in accordance with the directions above stated. The trial court shall make due return to the order of remandment, with notice thereof to each of the parties. Either party aggrieved thereby will have fifteen days thereafter in which to file a brief to this court and the opposing party will have fifteen days within which to file a reply brief.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of conviction in each case is hereby affirmed, and the case is remanded with directions for another sentence hearing.
AFFIRMED; REMANDED WITH DIRECTIONS FOR ANOTHER SENTENCE HEARING.
All the Judges concur.
[1] Throughout the record the store was referred to by the names Stop and Shop Mini Mart, Stop and Shop, and Stop and Snack. *Page 325 
[EDITORS' NOTE: THE OPINION ORIGINALLY APPEARING ON THIS PAGE WAS WITHDRAWN AT THE REQUEST OF THE COURT.] *Page 326 
[EDITORS' NOTE: THE OPINION ORIGINALLY APPEARING ON THIS PAGE WAS WITHDRAWN AT THE REQUEST OF THE COURT.] *Page 327